UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE REMEDIOS
SILVA CRUZ, *et al.*,

Plaintiffs,

Case No. 19-cv-13003
Hon. Matthew F. Leitman

v.

GENERAL MOTORS LLC,

Defendant.

______________________________________________________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS* (ECF No. 10) AND DENYING PLAINTIFFS' MOTION TO FILE A SUR-REPLY (ECF No. 17)**

In 2018, Jose Remedios Silva Garcia, Clara Guadalupe Beltran Fraire, Desteny Aguilar Beltran, and Susana Frayre Esquivel died in a rollover vehicle accident in the State of Durango, Mexico. In this action, the personal representatives of these decedents' estates bring several claims against Defendant General Motors LLC ("GM") arising out of the accident. Plaintiffs allege, among other things, that the decedents' vehicle – a 1990 GMC Sierra – was unreasonably dangerous because of its increased risk of a rollover and its lack of a crashworthy roof.

GM has now moved to dismiss Plaintiffs' action for *forum non conveniens*. (*See* Mot. to Dismiss, ECF No. 10.) For the reasons explained below, the Court **DENIES** the motion.

# I

## A

On July 2, 2018, driver Jose Remedios Silva Garcia and three passengers, Clara Guadalupe Beltran Fraire, Desteny Aguilar Beltran, and Susana Frayre Esquivel, were traveling in a 1990 GMC Sierra (the "Sierra") in Cuencamé, a municipality in the State of Durango, Mexico. (*See* Compl. ¶¶ 3–8, ECF No. 1-1, PageID.12–13.) The Sierra was manufactured in part, designed in part, assembled in final form, and sold at wholesale by GM in Wayne County, Michigan.[1] (*See* Compl. ¶¶ 4, 13, ECF No. 1-1, PageID.12–13; Mot. to Dismiss at 2 n.1, ECF No. 10, PageID.67.)

As Garcia was driving, the Sierra was involved in a single-vehicle accident. All of its occupants died in the accident. (*See* Compl. ¶¶ 9–10, ECF No. 1-1, PageID.13; Translated Accident Report, ECF No. 10-3, PageID.94–99.) At the time

---

[1] The Sierra was actually "manufactured in part, designed in part, assembled in final form, and sold at wholesale by General Motors Corporation ('GMC'), which filed for bankruptcy on June 1, 2009 in the U.S. Bankruptcy Court for the Southern District of New York." (Mot. to Dismiss at 2 n.1, ECF No. 10, PageID.67.) For ease of reference, the Court will refer collectively to GMC and GM as "GM." The Court understands that General Motors LLC may wish to assert defenses related to its status as an entity separate from General Motors Corporation and/or related to orders entered in bankruptcy proceedings related to General Motors Corporation. The Court's use of the term "GM" to refer collectively to General Motors LLC and General Motors Corporation should not be construed as expressing any opinion related to such possible defenses. The Court is using that term solely for convenience.

of the accident, Garcia lived in the United States, and the three passengers lived in Mexico. (*See* Garcia Pet. for Probate, ECF No. 10-6, PageID.116; Fraire Pet. for Probate, ECF No. 10-4, PageID.103; Beltran Pet. for Probate, ECF No. 10-5, PageID.110; Esquivel Pet. for Probate, ECF No. 10-7, PageID.122.)

Following the accident, estates were opened for each of the decedents in the Wayne County Probate Court, and the Plaintiffs in this action were appointed as personal representatives for the decedents. (*See* Pets. for Probate, ECF Nos. 10-4, 10-5, 10-6, and 10-7.) Plaintiff Arturo Aguilar Carlos is the personal representative for decedents Clara Guadalupe Beltran Fraire and Desteny Aguilar Beltran. (*See* Fraire Pet. for Probate, ECF No. 10-4, PageID.105; Beltran Pet. for Probate, ECF No. 10-5, PageID.111.) He lives in Mexico. (*See id.*) Plaintiff Jose Remedios Silva Cruz is the personal representative for decedent Jose Remedios Silva Garcia. (*See* Garcia Pet. for Probate, ECF No. 10-6, PageID.117.) He lives in North Carolina. (*See id.*) Plaintiff Maria Clara Beltran Fraire is the personal representative for decedent Susana Frayre Esquivel. (*See* Esquivel Pet. for Probate, ECF No. 10-7, PageID.123.) She lives in Texas. (*See id.*) According to Plaintiffs, they opened the estates for the decedents in Wayne County because the primary asset of each estate is the claim against GM – *i.e.*, the claim that is being asserted in this action – and GM is located in Wayne County. (*See* Resp., ECF No. 15, PageID.178–179, 190.)

**B**

On October 9, 2019, Plaintiffs sued GM in the Wayne County Circuit Court. (*See* Notice of Removal ¶ 1, ECF No. 1, PageID.2.) Plaintiffs bring claims of product liability, negligent and/or gross negligent design, and breach of implied warranty and/or express warranty. (*See* Compl. ¶¶ 11–19, ECF No. 1-1, PageID.11–16.) Plaintiffs allege, among other things, that the Sierra was unreasonably dangerous because of its increased risk of a rollover and its lack of a crashworthy roof. (*See id.*) GM removed the action to this Court on October 11, 2019. (*See* Notice of Removal, ECF No. 1, PageID.1–9.)

GM filed the instant Motion to Dismiss for *Forum Non Conveniens* on February 28, 2020. (*See* Mot. to Dismiss, ECF No. 10.) In the motion, GM argues that this action should be litigated in Mexico rather than in this Court. (*See id.*, PageID.71–81.) Although GM broadly asserts that this action "should be decided by a Mexican court," (*id.*, PageID.66), GM does not specifically identify *which* Mexican court would have jurisdiction over this action.[2]

[2] "Like the United States, Mexico has adopted a dual system of federal and state courts. There are also specialized tribunals in Mexico that handle disputes in such areas as elections, labor, taxation, agriculture, and the military." Julienne Grant *et al.*, Am. Ass'n of Law Libraries, *Mexican Law and Legal Research* 41 (2014), https://lawecommons.luc.edu/cgi/viewcontent.cgi?article=1521&context=facpubs. GM has not identified whether this action should be in a Mexican federal court, state court, or other specialized tribunal.

Plaintiffs failed to timely respond to GM's motion, and on March 25, 2020, GM filed a "Reply" asking that its motion be granted. (*See* Reply, ECF No. 11.) The same day, the Court ordered Plaintiffs to show cause why the Court should not grant GM's motion. (*See* Show Cause Order, ECF No. 12.) Plaintiffs filed a response to the Court's show cause order – as well as a response to GM's motion to dismiss – on April 8, 2020.[3] (*See* Resp., ECF No. 15.) GM then filed a substantive reply brief on April 22, 2020.[4] (*See* Reply, ECF No. 16.)

After reviewing the record and the briefs submitted by the parties, the Court concludes that it can resolve GM's motion without oral argument. *See* E.D. Mich. Local Rule 7.1(f)(2).

[3] According to Plaintiffs, their failure to timely respond to GM's motion to dismiss was due to clerical errors, technological errors and misunderstandings, and miscommunications. (*See* Resp., ECF No. 15, PageID.148–151; *see also* Stacy Decl., ECF No. 15-1; Leger Decl., ECF No. 15-2; Pietsch Aff., ECF No. 15-3.) The Court chooses to consider Plaintiffs' tardy response because there was limited prejudice suffered by GM, Plaintiffs' delay was brief, the delay did not greatly affect the proceedings, and Plaintiffs' delay appears to have been the result of a good-faith mistake.

[4] Plaintiffs filed a motion requesting leave to file a sur-reply, arguing that (a) GM submitted two "replies" (ECF Nos. 11 and 16) and (b) GM's second reply (ECF No. 16) sought to submit new evidence. (*See* Mot., ECF No. 17.) The Court disagrees with Plaintiffs' arguments and **DENIES** Plaintiffs leave to file a sur-reply.

## II

### A

"*Forum non conveniens* is a common law doctrine that allows a district court not to exercise its jurisdiction." *Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019). The doctrine "generally applies when the alternative forum is in a foreign country, rather than in a different district within the federal system." *Id.* There are three considerations that a court must address when analyzing a *forum non conveniens* motion: "(1) whether an adequate alternative forum is available; (2) whether a balance of private and public interests suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court; and (3) the amount of deference to give the plaintiff's choice of forum." *Id.* For the reasons explained below, the Court concludes that the balance of these factors warrants denying GM's motion to dismiss for *forum non conveniens*.

### B

The Court turns first to whether "an alternative forum exists, which requires another forum to be both available and adequate." *Id.* at 1090–91 (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). An alternative forum is typically "available" if "the defendant is amenable to process there" and is generally "adequate" if "it can remedy the alleged harm." *Id.* "The defendant bears the burden of identifying an alternative forum that meets these criteria." *Associação Brasileira*

*de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 620 (6th Cir. 2018). "It bears emphasizing that identifying an alternate forum is a prerequisite for dismissal, not a factor to be balanced. If there is no suitable alternate forum where the case can proceed, the entire inquiry ends." *Id.* at 619–20.

GM has not met its burden of demonstrating that Mexico is an alternative forum that is available and adequate. First, GM contends that Mexico is an available and adequate forum because GM has consented to jurisdiction in Mexico and has agreed to toll any Mexican statutes of limitations that may have run. (*See* Mot. to Dismiss, ECF No. 10, PageID.71; Cooney Decl. ¶ 2, ECF No. 16-1, PageID.230–231.) But GM "has provided no evidence that its consent to jurisdiction in [Mexico] would be legally meaningful." *Associação Brasileira*, 891 F.3d at 621. As the Sixth Circuit explained in *Associação Brasileira*, a defendant's assertion that it is amenable to process in a foreign forum – without guidance from legal experts or citations to the forum's law or to relevant treatises – may fail to demonstrate that the foreign forum is truly available:

> By way of analogy, a party's consent to a federal court's jurisdiction over her state-law claim worth $50,000 would not be legally meaningful; regardless of her consent, the federal court would be unable to hear the case for lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1332. On the record before us, we do not know if Abramge can prove (or if Stryker admits) that Stryker has any connection to Brazil, nor do we know if Brazilian courts permit litigation over this subject matter. Without guidance from Brazilian legal experts or even citations to Brazilian law or treatises,

> we do not know whether Brazil's personal and subject-matter jurisdiction requirements could be satisfied on the facts alleged here. Stryker must point to some evidence in the record indicating that Brazil truly is "available," lest Abramge be left without a forum in which to press its case. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 813 (7th Cir. 2016); *Solari*, 654 Fed.Appx. at 767; *Estate of Thomson* [*ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 365 (6th Cir. 2008)]; *see also, e.g.*, *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (relying in part on an expert affidavit explaining that Saudi law recognizes consents to jurisdiction).

*Id.* at 621–22. Here, GM seems to assume that its consent to jurisdiction in a Mexican court would be valid, enforceable, and sufficient to permit such a court to adjudicate this action. But without any supporting evidence or analysis, this Court lacks a sufficient basis to reach that conclusion.

Second, GM highlights that several other American courts have found Mexican courts to be adequate and available fora for products liability actions against American manufacturers. (*See* Mot. to Dismiss, ECF No. 10, PageID.71–73; citing, among other cases, *In re Ford Motor Co.*, 591 F.3d 406 (5th Cir. 2009), *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003), *Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002), and *Hernandez v. Ford Motor Co.*, 760 N.W.2d 751 (Mich. Ct. App. 2008).) GM says that these cases confirm that a Mexican court would be an adequate and available forum for this action. The Court disagrees.

The cases cited by GM do not purport to establish or apply a *per se* rule that a Mexican court is an adequate and available forum for a product liability action against an American manufacturer whenever, as here, the manufacturer consents to jurisdiction. Instead, each American court in the cases cited by GM undertook a careful case-specific inquiry – that considered, among other things, particular Mexican laws and remedies as well as expert testimony concerning Mexican law – to determine whether the Mexican court in question was an available and adequate forum. *See, e.g.*, *Gonzalez*, 301 F.3d at 381–83 & 381 n.5 (analyzing whether the remedy available to plaintiff under the law in the State of Mexico – one of the 32 states in the country of Mexico – rendered the courts of that state inadequate); *Vasquez*, 325 F.3d at 671–72 & 672 n.4 (analyzing whether the remedy available to plaintiff under the law in the State of Nuevo Leon, Mexico, rendered the courts in that state adequate and relying in part on testimony by defendant's expert that Nuevo Leon law provided an adequate remedy for plaintiff's wrongful death cause of action); *Hernandez*, 760 N.W.2d at 752–58 (relying in part on expert testimony and citations to Mexican law to determine that Mexico was an available forum for plaintiff's litigation). Here, in contrast, GM has not undertaken a case-specific analysis – much less provided expert testimony or directed the Court to applicable Mexican federal or state laws or remedies – demonstrating that a Mexican court would be an adequate and available forum for this action.

It may well be that GM *could have* established that a Mexican court would be an adequate and available forum. But it failed to do so. That failure, alone, requires denial of GM's motion. *See Associação Brasileira*, 891 F.3d at 619–20. However, as described below, the Court would have denied GM's motion even if GM had shown that a Mexican court is an adequate and available alternative forum.

**C**

"If an adequate alternative forum is available, then courts examine whether the plaintiff's choice of forum is unnecessarily burdensome." *Jones*, 920 F.3d at 1092 (citing *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 (6th Cir. 2010)). "To guide that analysis, courts look to the private and public interests that the Supreme Court listed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 [(1947)]." *Id.* "The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 498 (6th Cir. 2016). GM has not carried that burden.

**1**

The private-interest factors weigh against dismissing this action for *forum non conveniens*. "Private-interest factors include 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial

of a case easy, expeditious and inexpensive." *Id.* (quoting *Gulf Oil*, 330 U.S. at 508). The Court addresses each factor in turn.

*Ease of Access to Sources of Proof*. GM has not demonstrated that access to sources of proof renders litigating in Michigan more burdensome than litigating in Mexico. Key witnesses and documents regarding GM's allegedly defective design, testing, and manufacture of the Sierra are located in Michigan, not in Mexico, and the documents that are here require no translation. (*See* Resp., ECF No. 15, PageID.157, 193; *see also Duha v. Agrium, Inc.*, 448 F.3d 867, 875–77 (6th Cir. 2006) (holding that the ease-of-access favor weighed against dismissal when the bulk of the relevant documents were located in the United States and written or translated in English).) Moreover, the police report of the accident has already been translated into English (*see* Translated Accident Report, ECF No. 10-3), and the Sierra is stored in the United States – where the parties and their experts have already inspected it. (*See* Resp., ECF No. 15, PageID.154–155; Leger Decl. ¶¶ 7–10, ECF No. 15-2, PageID.207–208.) Finally, GM has not demonstrated that the cost or difficulty of obtaining or translating any other sources of proof in Mexico would be especially burdensome.

*Availability of Compulsory Process*. GM also has not demonstrated that a lack of compulsory process over Mexican witnesses favors litigating in Mexico. GM contends that Mexican "witnesses will be beyond the subpoena power of United

States courts, raising complicated issues in obtaining relevant evidence from investigating officers, medical examiner[s], and other Mexican government agencies." (Resp., ECF No. 10, PageID.78–79.) But GM has not identified any particular witness who is unwilling to appear and thus would require compulsory process to ensure their attendance. *See Duha*, 448 F.3d at 877 ("[A]lthough the availability of compulsory process is properly considered when witnesses are unwilling, it is less weighty when it has not been alleged or shown that any witness would be unwilling to testify."). Nor has GM submitted any evidence that the "cost of travel and of obtaining testimony of witnesses" would be "an oppressive or vexatious burden" on GM. *Zions*, 629 F.3d at 526.

*Possibility of View of Premises*. GM contends that "[p]hysical evidence is also located in Mexico, most crucially the accident scene and roadway, which will require experts, investigators, and possibly lawyers to travel to Mexico." (Mot. to Dismiss, ECF No. 10, PageID.79.) But GM's lawyers and experts would have to undertake that travel regardless of where this action is litigated. Thus, this factor does not weigh in favor of transfer.

*Other Practical Problems*. Finally, GM has not demonstrated that any other practical problems render litigating in Michigan more burdensome than litigating in Mexico. GM argues that "[i]nterpreters and translations will be required for depositions and essential documents" and that "[m]ultiple trips across the border

(both ways) will be required for discovery and trial."[5] (Mot. to Dismiss, ECF No. 10, PageID.77.) But this lawsuit will likely require translations and multiple trips across the border regardless of where it is litigated. Accordingly, GM has not demonstrated that the costs of travel, translation, or interpretation make litigating in Michigan unduly burdensome.

**2**

The public-interest factors, in contrast, weigh in favor of dismissing this action for *forum non conveniens*. "Public-interest factors include administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Hefferan*, 828 F.3d at 500 (internal quotation marks omitted) (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). The most relevant public-interest factors here relate to local interests in the litigation and to conflict of laws issues.

*Local Interest in Deciding a Local Controversy*. Given the decedents' connections to Mexico and the location of the injury in Mexico, Mexico has a strong

---

[5] GM raised this argument in the context of the public-interest factors, but the Court reads this argument as sounding in a private-interest argument that litigating in Michigan would be more burdensome to GM than litigating in Mexico.

interest in having this dispute adjudicated in a Mexican court. As the Sixth Circuit has explained:

> [W]hen a case pits an American manufacturer against foreign nationals injured at home by a product sold there, the 'incremental deterrence' of trial in the United States usually cannot overcome the foreign forum's interest in the dispute. . . . The country where a product is sold, used, and regulated has a strong interest, often an insurmountably strong interest, in litigation involving that product."

*Id.*[6]

*Conflict of Laws*. "The public interests favor dismissal not just when a court has to apply foreign law, but also when the court 'would be required to *untangle problems* in conflict of laws[.]'" *Jones*, 920 F.3d at 1094 (quoting *Piper Aircraft*, 454 U.S. at 251) (emphasis in original). This case seems to present such problems. Both parties raise serious arguments about whether Michigan or Mexican law should apply to Plaintiffs' claims. (*See* Mot. to Dismiss, ECF No. 10, PageID.74–75; Resp., ECF No. 15, PageID.187–191; Reply, ECF No. 16, PageID.223–224.) The Court does not take a position at this time about which law should apply. But the fact that the Court will have to "untangle" a substantial conflict-of-laws dispute weighs in favor of dismissing the action for *forum non conveniens*. *Jones*, 920 F.3d at 1094.

---

[6] The record is unclear regarding where the Sierra was purchased or who owned it. In the Accident Report, the vehicle's ownership is listed as "unknown due to lack of documentation," and no insurance policy was associated with the vehicle. (Translated Accident Report, ECF No. 10-3, PageID.94.)

*Additional factors*. The remaining public-interest factors are neutral. There is no persuasive evidence that the burden on jurors in this Court would be different than the burden on jurors in a Mexican court, nor is there evidence of congestion in this Court or in a Mexican court that would affect the *forum non conveniens* analysis.

**3**

In sum, the private-interest factors weigh in favor of retaining the action here, and the public-interest factors weigh in favor of dismissal for *forum non conveniens*. The competing interests are roughly in equipoise. That is not sufficient to warrant a transfer based upon *forum non conveniens*. *See Hefferan*, 828 F.3d at 498 (explaining that transfer based upon *forum non conveniens* is appropriate only where the defendant shows that the plaintiff's choice of forum is "unnecessarily burdensome").

**D**

A transfer based upon *forum non conveniens* would be especially inappropriate here – with the roughly equal balance between the private and public interests – given that, as described below, the Plaintiffs' choice of forum is entitled to at least some deference. The Sixth Circuit has offered the following guidance concerning the level of deference to be afforded a plaintiff's forum choice:

> *Forum non conveniens*, as we mentioned, is largely intended to secure convenient trials, and we defer to a plaintiff's choice of forum based on an assumption that the plaintiff will choose a convenient forum. That assumption

> is stronger when a plaintiff picks his home forum, so we give greater deference in those circumstances. *Hefferan*, 828 F.3d at 493 (citation omitted). We likewise defer less to a plaintiff who picks a foreign forum because the assumption is weaker. *Id.* Those assumptions and the corresponding levels of deference are helpful tools, not oppressive masters. When the facts plainly show that the assumptions do not hold true, then courts need not adhere blindly to the corresponding levels of deference. *See id.* ("Although descriptively accurate and useful in many cases, that is not an unyielding rule that district courts must apply with equal force in every situation.").

*Jones*, 920 F.3d at 1094–95. The Sixth Circuit has explained this deference analysis as a "sliding convenience scale" where "the greater the plaintiff's connection to the United States 'and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*.'" *Hefferan*, 828 F.3d at 493–94 (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc)).

The Court concludes that Plaintiffs' choice of forum here is entitled to at least some deference even though, as Plaintiffs acknowledge, for *forum non conveniens* purposes "they are foreign." (Resp., ECF No. 15, PageID.176.) First, there is at least some connection between the Plaintiffs, the decedents, and the United States. One of the decedents (Jose Remedios Silva Garcia) lived in the United States, and two of the Plaintiffs (Jose Remedios Silva Cruz and Maria Clara Beltran Fraire) live in the

United States. Second, and more importantly, Plaintiffs chose a convenient forum. GM is at home in Michigan. (*See* Notice of Removal, ECF No. 1, PageID.4.) GM is represented by Michigan counsel. And, as discussed above, most of the witnesses, documents, and other evidence related to Plaintiffs' product liability allegations are located in Michigan. For these reasons, the Court will afford some deference to Plaintiffs' choice of forum.

**E**

In sum, the balance of public and private interests does not weigh in favor of dismissal, and Plaintiffs' choice of this forum is entitled to at least some deference. Under these circumstances, even if GM had established that a Mexican court would be an adequate and available forum, the Court would exercise its broad discretion to retain this action and to decline to dismiss based upon *forum non conveniens*. *See Jones*, 920 F.3d at 1090 ("*Forum non conveniens* decisions 'are committed to the sound discretion of the trial court.'" (quoting *Piper Aircraft*, 454 U.S. at 257)).

**III**

Accordingly, for all of the reasons explained above, the Court **DENIES** GM's Motion to Dismiss for *Forum Non Conveniens* (ECF No. 10).

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 2, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 2, 2020, by electronic means and/or ordinary mail.

s/ Holly A. Monda
Case Manager
(810) 341-9764